**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TERRY DONELLE SANDERS #205630,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 3:16-cv-02763** |
| **v.** | ) | |
| | ) | **Judge Roberts** |
| **TAMMY FORD,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM</u>

Petitioner Terry Donelle Sanders has filed a *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus. (ECF No. 1.) Respondent has filed an answer, along with portions of the state court record. (ECF Nos. 28, 29.) For the reasons set forth below, the petition will be denied.

## I.     BACKGROUND AND PROCEDURAL HISTORY

After his first trial ended in a mistrial,[1] Petitioner was retried, and a Houston County jury convicted him on January 14, 2010, of two counts of sale of less than .5 grams of cocaine. (ECF No. 28-1, at 47, 48.). The trial court imposed a sentence of 15 years in prison on each count, to be served consecutively, for a total effective sentence of 30 years. (*Id.*) Petitioner appealed, raising three grounds for relief: (1) the trial court should have granted his motion for mistrial after a prosecution witness testified that Petitioner was on community corrections at the time of the cocaine sales; (2) the trial court should have granted his motion for new trial based on a juror's familial relationship with the district director of community corrections; and (3) his right to a fair trial was violated by the same juror's attorney-client relationship with defense counsel. (ECF No. 28-9.) The Tennessee Court of Criminal Appeals (TCCA) affirmed (*id.*), and the Tennessee

---

[1] Testimony at the post-conviction hearing indicates that the cause of the mistrial was the discovery of a video of one of the drug sales, which had not been disclosed to Petitioner before trial. (ECF No. 28-18, at 10.)

Supreme Court denied permission to appeal. (ECF No. 28-11.)

Petitioner filed a pro se petition for state post-conviction relief, in which he raised three claims of ineffective assistance of trial counsel [IATC], and one claim of ineffective assistance of appellate counsel: (1) trial counsel was ineffective for failing to communicate or discuss trial strategy with Petitioner before trial; (2) trial counsel was ineffective during trial for failing to move to suppress evidence, for failing to move the judge to recuse himself, and for allowing his client and the sister of Petitioner's "correctional officer" to serve on the jury; (3) trial counsel was ineffective with regard to the motion for new trial for failing to amend the written motion to include the issue about the juror; and (4) appellate counsel was ineffective for failing to raise claims of insufficient evidence, excessive sentencing, "and other important issues." (ECF No. 28-12, at 3–12.)  Counsel was appointed and filed an amended petition that alleged nine IATC claims:

a.  Trial Counsel failed to adequately conduct any meaningful pre-trial investigation.

b.  Trial Counsel failed to adequately communicate with Petitioner in preparation for trial.

c.  Trial Counsel failed to properly and thoroughly *voir dire* the jury panel, resulting in a petit jury that was unconstitutionally selected and impaneled.

d.  Trial Counsel neglected to request the recusal of the trial Judge, who had on several occasions both prosecuted and presided over criminal proceedings against the Petitioner.

e.  In inducing and/or allowing certain testimony to be heard by the petit jury, both Trial Counsel and the trial Judge failed to provide the Petitioner with due process of the law.

f.  Trial Counsel failed to properly and thoroughly investigate the biases and deliberative behaviors of the improperly seated jurors post-trial.

g.  Trial Counsel failed to suitably review and perfect the record for transmission to the court of criminal appeals.

h.  Trial Counsel did not ensure that the Petitioner received and was able to review the pre-sentence report before its introduction to the Court.

i.  The Petitioner was sentenced to an enhanced range, which was founded upon constitutionally infirm convictions, prior pre-sentence reports and judgments, and therefore the sentencing range is voidable.

(ECF No. 28-12, at 19–20.)  The state court held an evidentiary hearing and denied post-conviction relief. (ECF No. 28-12, at 27–61.)  The TCCA affirmed, and the state supreme court

denied permission to appeal. (ECF Nos. 28-20, 28-23.)

There is no dispute about the timeliness of the current petition.

## II.    STATEMENT OF FACTS

The TCCA summarized the facts of the case as follows:

The defendant was the subject of a drug investigation in which police sent a confidential informant to buy crack cocaine from the defendant at his home. The defendant was on house arrest at the time as part of his participation in a community corrections program. The confidential informant was wired for sound and video at a location close to the defendant's residence and then drove to the defendant's residence to buy the drugs. The confidential informant was furnished with $60 on one occasion and $40 on another occasion to use in the purchase of the drugs, and he received $100 on each occasion as payment for his participation. The confidential informant received payment only if he was successful in purchasing drugs from the defendant. On the occasion of the first drug purchase, a police officer followed the informant to a location close to the defendant's house, but did not follow him down the defendant's street because it was a dead end and the officer did not want to raise suspicions regarding the informant. The informant testified that, on the way, he made a telephone call to the defendant to let him know he was coming to purchase drugs. The informant and his vehicle were searched before and after both purchases. At trial, the police officer who had conducted the search acknowledged that an object the size of the rocks of cocaine which the confidential informant turned over to police would not necessarily be found in the type of search conducted on the informant.

Although the informant was wired for video and sound, the video equipment malfunctioned during the second purchase. The remaining video did not capture any image of the defendant during the purchase, and neither audio recording captured the defendant saying anything. The confidential informant testified that, on the occasion of the first purchase, he arrived and told the defendant he had the money. "At that point in time he told me—put his finger up to his mouth telling me that I needed to be quiet and pointed down towards his ankle." At the commencement of the trial, the trial court noted outside the jury's presence that this testimony had previously been ruled admissible, but the court would not allow the informant to mention that the defendant was on community corrections at the time. The defense objected to the admission of the testimony that the defendant pointed to his ankle but did not challenge it in the motion for a new trial. The informant testified he did not say anything further after the defendant pointed to his ankle and did not speak during the subsequent buy because the defendant had shushed him on the first occasion. The informant acknowledged that in the second audio recording, his knocking on the defendant's door was also not audible. The informant was cross-examined regarding the fact that in the recording, the informant did not mention to police that the defendant had pointed to his ankle, but instead stated that the defendant had indicated he should be quiet and speculated that the defendant had company.

During the vigorous cross-examination, the confidential informant referred to the

defendant's participation in the community corrections program:

> Q. Okay.
>
> Now if you didn't call Terry Sanders until you were on your way and there was no discussion of the amount of drugs to be bought or the amount of money you were going to take, how much money did you know to take or to ask the agents for?
>
> A. That was just a decision that was made—once I met up with [the police officer], he made a decision as to how much to carry and that's what we carried.
>
> Q. So [the defendant] would have no idea of knowing how much money you're coming with or how much crack cocaine he needed to have ready for you.
>
> A. Correct.
>
> Q. You just showed up and that's the way it went down.
>
> A. Yes, sir.
>
> Q. That's the way a professional drug buyer does it, he just shows up, doesn't set up anything ahead of time.
>
> A. Because you don't call and set things like that up ahead of time.
>
> Q. You don't?
>
> A. You might call them and let them know that you're on your way and that's it.
>
> Q. With no phone call ahead of time to even know that he was home.
>
> A. [The defendant] had to be home.
>
> Q. He had to be home?
>
> A. He was on community corrections.

The defendant moved for a mistrial, and the court denied the motion, finding that "[y]ou didn't sling the door wide open but you sort of cracked it." After a recess, the court gave a curative instruction, admonishing the jury that although the witness had mentioned community corrections, the jury was "to disregard that and ... not consider that at all for any reason in ... deliberations." The jury found the defendant guilty on both counts.

*State v. Sanders*, No. M2011-00426-CCA-R3CD, 2012 WL 5948885, at *1–2 (Tenn. Crim. App.

Nov. 15, 2012).

## III.   ISSUES PRESENTED FOR REVIEW

Petitioner raises three claims for relief:

1. The trial court erred in failing to declare a mistrial. (ECF No. 1, at 5; ECF No. 1-2, at 1.)

2. Trial counsel was ineffective for the following reasons (ECF No. 1–2, at 3–15):

   1) Trial Counsel failed to adequately conduct any meaningful pre-trial investigation.

   2) Trial Counsel failed to adequately communicate with Petitioner in preparation for trial.

   3) Trial Counsel failed to properly and thoroughly voir dire the jury panel, resulting in a petit jury that was unconstitutionally selected and impaneled.

   4) Trial Counsel neglected to request the recusal of the trial Judge, who had on several occasions both prosecuted and presided over criminal proceedings against the Petitioner.

   5) In inducing and/or allowing certain testimony to be heard by the petit jury, both Trial Counsel and the trial Judge failed to provide the Petitioner with due process of the law.

   6) Trial Counsel failed to properly and thoroughly investigate the biases and deliberative behaviors of the improperly seated jurors post-trial.

   7) Trial Counsel failed to suitably review and perfect the record for transmission to the court of criminal appeals.

   8) Trial Counsel did not ensure that the Petitioner received and was able to review the pre-sentence report before its introduction to the Court.

3. The Petitioner was denied a fair trial due to cumulative error. (*Id.* at 15.)

## IV.   STANDARD OF REVIEW

### A.   AEDPA Review on the Merits

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S .C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637

(1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford*, 538 U.S. at 206 (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). The requirements of AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

at 413. A state court decision is not unreasonable under this standard simply because the federal court concludes that the decision is erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under § 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings.'" *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting § 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 and n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under § 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

Thus the standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). The petitioner carries the burden of proof. *Pinholster*, 563 U.S. at 181.

By its express terms, Section 2254(d)'s constrained standard of review only applies to claims that were "adjudicated on the merits" in the state court proceeding, including instances where the state court rules against the petitioner in a summary opinion that rejects all claims without discussion, or an opinion that addresses some claims but does not expressly address all the federal claims presented. *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013); *Harrington v. Richter*, 562 U.S. at 98–99; *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004). Where a claim has not been adjudicated on the merits in state court but is still subject to federal review despite the bars of exhaustion and default, "federal habeas review is not subject to the deferential standard that applies under AEDPA. . . . Instead, the claim is reviewed *de novo*." *Moritz v. Lafler*, 525 F. App'x 277, 282 (6th Cir. 2013) (quoting *Cone v. Bell*, 556 U.S. 449, 472 (2009)); *accord Bies v. Sheldon*, 775 F.3d 386, 395–96 (6th Cir. 2014) ("Because Bies' *Brady* claim was never 'adjudicated on the merits in State court proceedings,' the limitations imposed by § 2254(d) do not apply, and we review the claim de novo.").

## B. Exhaustion and Procedural Default

### 1. Exhaustion

28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Cullen v. Pinholster*, 563 U.S. at 182. The petitioner must "fairly present"[2] each claim at all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999). Tennessee Supreme Court Rule 39 eliminated the need to seek review in that court in order to

---

[2] For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). Nor is it enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

"be deemed to have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003), *cert. denied*, 541 U.S. 956 (2004); *see also Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010) ("*Adams* not only requires the federal courts to ensure that the state courts have the first opportunity to review and evaluate legal claims ... but also mandates that the federal courts respect the duly-promulgated rule of the Tennessee Supreme Court that recognizes the law and policy-making function of that court and the court's desire not to be entangled in the business of simple error correction").

This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). For the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Specifically, in determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, federal courts should consider whether the petitioner: (1) phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) relied upon federal cases employing the constitutional analysis in question; 3) relied upon state cases employing the federal constitutional analysis in question; or (4) alleged "facts well within the mainstream of [the pertinent] constitutional law." *Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (quoting

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Moreover, the claim must be presented to the state courts under the same legal theory in which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  It cannot rest on a legal theory that is separate and distinct from the one previously considered and rejected in state court. *Id.*  This does not mean that the applicant must recite "chapter and verse" of constitutional law, but the applicant is required to make a specific showing of the alleged claim. *Wagner*, 581 F.3d at 414.

### 2.    *Procedural Default*

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine).  If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same).[3]  If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), then the claim is technically exhausted, but procedurally barred. *Coleman*, 501 U.S. at 731–32; *see also Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004) (the procedural default doctrine prevents circumvention of the exhaustion doctrine).

---

[3] "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker*, 562 U.S. at 315.  A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed." *Id.* (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). "A discretionary state procedural rule ... can serve as an adequate ground to bar federal habeas review ... even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* at 1128 (quoting *Kindler*, 558 U.S. at 60–61) (internal citations & quotation marks omitted).

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754).

A petitioner seeking to overcome procedural default must establish prejudice as well as cause. To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 495–96); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

## V.    ANALYSIS AND DISCUSSION

### A.    Claim 1

Petitioner claims that the trial court erred in not granting a mistrial based on the revelation in the testimony quoted above that he was on community corrections at the time of

the cocaine sales, and based on the relationships between a juror and defense counsel and the director of the community corrections program. He exhausted this claim on direct appeal, and the TCCA rejected it on the merits:

> During voir dire, the jurors were asked if they knew, had been represented by, or had friends or family represented by the defendant's attorney. No juror answered in the affirmative. After the verdict, defense counsel submitted an affidavit that one of the jurors was in fact a current client of his who had failed to disclose the fact that she knew him. Defense counsel asserted he did not recognize the juror.2 Furthermore, defense counsel asserted that this same juror was the sister of the district director of the community corrections program. The juror was not called to testify at any subsequent hearing.

>> FN2 At the defendant's sentencing hearing, defense counsel explained that he had spoken to the juror by phone and written a letter on her behalf but had never met her. He became aware that he represented her when, after trial, the juror asked the clerk to summon him to discuss her case.

> The defendant filed a renewed motion for mistrial on January 25, 2010, based on the testimony regarding community corrections and the juror issues. The trial court denied the renewed motion for a mistrial. The defendant also filed a motion for a new trial on March 4, 2010, asserting, among other issues, that the trial court erred in denying the motion for a mistrial based on the testimony regarding community corrections and that the trial court erred in denying the renewed motion for a mistrial based on the juror's familial relationship to the director of community corrections. At the hearing on the motion for a new trial, the defendant moved the court to orally amend the motion to additionally assert that the defendant was also entitled to a new trial because of the juror's failure to reveal her relationship with defense counsel. Although defense counsel stated his intention to make a written amendment, the record is devoid of any amendment in writing. The court denied the motion for a new trial. The defendant appeals the trial court's decision, contending that the court should have granted him a mistrial based on (1) the testimony regarding community corrections; (2) the juror's relationship to the district director of the community corrections program; and (3) the juror's failure to reveal that defense counsel represented her in a civil matter.

> A. Testimony Regarding Community Corrections

> The defendant asserts that the trial court erred in not granting a mistrial after the confidential informant testified that the defendant was participating in community corrections at the time of the purchase. A mistrial is a procedural device through which the court stops the trial, discharges the jury, and holds a new trial with a new jury to determine the defendant's guilt. *See State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). A mistrial is declared in order to "to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Welcome*, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007). Only manifest necessity justifies the declaration of a mistrial, and the defendant bears the burden of showing manifest necessity. *State v.*

*Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). A mistrial is appropriate where a trial cannot continue, or the trial's continuation would be a miscarriage of justice. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). The decision to grant a mistrial rests in the sound discretion of the trial court, and the trial court's decision will not be overturned on appeal absent an abuse of discretion. *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002). In determining whether the trial court has abused its discretion, an appellate court considers: (1) whether the State elicited the testimony; (2) whether the trial court gave a curative instruction; and (3) the relative strength or weakness of the State's proof. *Welcome*, 280 S.W.3d at 222.

In the present case, the damaging testimony was neither elicited by the State nor volunteered by the witness. Instead, it was given in response to defense counsel's probing into the witness's statement that the defendant "had to be home." The trial court gave prompt and appropriate curative instructions. Both these factors weigh in favor of not granting a mistrial. Much of the strength of the prosecution's case turned on the testimony of the confidential informant. The defense vigorously cross-examined the informant regarding the financial incentive he had for returning with drugs; discrepancies in his memory of the events; the fact that the defendant is never visible on the video or audible on the audio recordings; and the fact that the informant did not mention the defendant's pointing to his ankle to the police immediately following the purchase. While the evidence of the defendant's guilt was not overwhelming, we conclude that, considering all three factors in conjunction, the trial court did not abuse its discretion in denying the motion for a mistrial. Moreover, the defendant does not appeal the informant's prior testimony that the defendant shushed the informant while pointing to his ankle, and the testimony regarding the defendant's participation in the community corrections program therefore "provided little new information to the jury." *Reid*, 91 S.W.3d at 279 (holding that the defendant was not entitled to a mistrial when evidence regarding the defendant's prior crimes was already before the jury and the trial court gave curative instructions). Accordingly, we affirm the trial court's denial of a mistrial on this basis.

B. Juror's Familial Relationship to the District Director of Community Corrections

The defendant next asserts that the trial court improperly denied his motion for a mistrial based on the fact that one juror was the sister of the district director of the community corrections program. This issue was first raised in the defendant's renewed motion for a mistrial, filed after the verdict was returned. "A mistrial is granted in a case in which the jury is discharged without a verdict; a motion for new trial is made after a judgment has been rendered." *Howell v. Davis*, 278 S.C. 510, 299 S.E.2d 336, 337 (S.C.1983); *see McPherson*, 882 S.W.2d at 370 ("A motion for the entry of a mistrial is a procedural device which requests the trial court to *stop the trial*, discharge the jury, and impanel another jury to determine the guilt of the accused." (emphasis added). The trial court's denial of the motion was raised in the defendant's motion for a new trial. We will review the juror bias issues as the basis for a motion for a new trial.

The right to an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution. Challenges to juror qualifications generally fall into one of two categories: propter affectum challenges based on bias, prejudice or partiality, which may be brought

after the return of the verdict, and propter defectum challenges based on a disqualification due to circumstances such as alienage, family relationship, or statutory mandate, which must be brought prior to the verdict. *Carruthers v. State*, 145 S.W.3d 85, 94 (Tenn. Crim. App. 2003). Insofar as the defendant brings a propter defectum challenge based on the juror's familial relationship with the district director of community corrections, the challenge should have been brought prior to the return of the verdict. However, insofar as the defendant alleges that the juror was actually biased due to her sister's position, he may be entitled to relief.

The defendant bears the burden to establish a prima facie case of juror bias. *Robinson*, 146 S.W.3d at 523 (appendix). A propter affectum challenge is sustained where the defendant either demonstrates actual bias or bias is presumed. *State v. Hugueley*, 185 S.W.3d 356, 378 (Tenn. 2006). Bias is presumed where in cases where "a juror willfully conceals (or fails to disclose) information on voir dire which reflects on the juror's lack of impartiality." *Smith v. State*, 357 S.W.3d 322, 348 (Tenn. 2011). Here, the juror was never asked a question that would have obligated her to reveal her relationship to the community corrections director. As neither the defendant nor the State chose to ask about a possible family relationship with community corrections personnel, the juror was not required to volunteer the information. "Juror bias must be shown, not just suspected." *Hugueley*, 185 S.W.3d at 380 (Tenn. 2006) (quoting *State v. Lawson*, 794 S.W.2d 363, 367 (Tenn. Crim. App. 1990)). No presumption of bias arises, and at the hearing on the motion for a new trial, the defendant introduced no proof showing actual bias on the part of the juror. Accordingly, the defendant is not entitled to a new trial based on the juror's familial relationship to community corrections personnel.

### C. Juror's Relationship with Defense Counsel

Although the juror was not asked any questions that would have obligated her to reveal her relationship with the district director of community corrections, the same was not true regarding her relationship with defense counsel. During voir dire, the State asked if any potential jurors knew defense counsel, and the juror did not respond. "[W]hen a juror's response to relevant, direct voir dire questioning ... does not fully and fairly inform counsel of the matters which reflect on a potential juror's possible bias, a presumption of bias arises." *State v. Akins*, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993). Silence in the face of a material question reasonably calculated to elicit the responses is equivalent to a negative answer. *Smith*, 357 S.W.3d at 348.

However, the State correctly notes that this issue was not raised in the defendant's motion for a new trial. At the hearing on the motion for a new trial, defense counsel informed the court that he wished to orally amend his motion to add juror bias based on defense counsel's representation of the juror. While defense counsel stated his intention to reduce this amendment to writing, there is no indication in the record that he ever did.

Tennessee Rule of Appellate Procedure 3 provides:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties

> or counsel, or other action committed or occurring during the trial
> of the case, or other ground upon which a new trial is sought,
> unless the same was specifically stated in a motion for a new trial;
> otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e). The Advisory Commission Comment to subsection (e) further clarifies that "matters that can only be made a part of the record by a new trial motion must be so included in order to gain appellate review. Jury misconduct provides one example." Tenn. R. App. P. 3(e) Advisory Comm'n cmt. Tennessee Rule of Criminal Procedure 33 allows a motion for a new trial to be raised orally, but requires that it be "be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). The trial court must "liberally grant" motions to amend "until the day of the hearing on the motion for a new trial." *Id.* While the structure of the rule makes it unclear if the requirement that the motion be in writing applies with equal force to amendments, this Court has previously held that an issue raised orally in a motion for a new trial and not subsequently reduced to writing is waived. State v. Stewart, No. M2008–00337–CCA–R3–CD, 2010 WL 2025407, at *4 (Tenn. Crim. App. May 21, 2010); *State v. Noles*, No. M2006–01534–CCA–R3–CD, 2007 WL 3274422, at *11 (Tenn. Crim. App. Nov.6, 2007); *State v. Watson*, No. W2001–03084–CCA–R3–CD, 2002 WL 31258011, at *2 (Tenn. Crim. App. Sept.16, 2002); *State v. Lanier*, No. W2001–00379–CCA–R3–CD, 2002 WL 1482712, at *4 (Tenn. Crim. App. Feb.1, 2002) (concluding issue was waived and then analyzing issue to determine whether the interest of justice justifies appellate review under Tennessee Rule of Appellate Procedure 4(a)). We conclude that the defendant waived review of the issue by failing to reduce it to writing.

Although an issue is waived, an appellate court may consider it if it rises to the level of plain error. *State v. Cooper*, No. E2011–00590–CCA–R3–CD, 2012 WL 950103, at *4 (Tenn. Crim. App. Mar. 20, 2012) (concluding that an oral amendment to a motion for a new trial which was not reduced to writing was waived and then conducting plain error analysis). However, in the instant case, there has been no allegation of plain error, and the issue has not been briefed. *See Waters v. Coker*, 229 S.W.3d 682, 690 (Tenn. 2007) (holding that an issue not raised in a motion for a new trial was waived and declining plain error analysis when plain error was not alleged or argued); *see also* Tenn. Ct. Crim. App. R. 10(b). In any case, the facts here do not establish plain error.

The Tennessee Supreme Court has noted that the authority to grant plain error relief should "be sparingly exercised." *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007) (quoting Tenn. R. App. P. 13(b), Advisory Comm'n cmt.). Relief should be granted only where it appears that the error was of such magnitude that it probably changed the outcome of the trial. *Id.*; see also Tenn. R. App. P. 36(b) (stating that a judgment shall not be set aside unless "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process"); Tenn. R. App. P. 36(b) Advisory Comm'n cmt. (noting that a judgment would be prejudicial to the judicial process if the decisionmaker were "obviously biased"). In analyzing plain error, the court looks to five factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused must not have waived the issue for tactical reasons; and (5)

> consideration of the error must be necessary to do substantial justice. *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000); *State v. Adkisson*, 899 S.W.2d 626, 641–42 (Tenn. Crim. App. 1994).
>
> Here, defense counsel's relationship with the juror was so superficial that he did not recognize her at trial. The juror knew nothing about the defendant in particular, and it is unclear what effect, if any, her relationship with defense counsel was likely to have on the outcome. The defendant has not established that any substantial right was affected or that the error probably changed the outcome of the trial. *Bledsoe*, 226 S.W.3d at 354. We conclude that the defendant's claim that the juror was biased due to her relationship with defense counsel is waived, and the defendant has not demonstrated plain error.

*State v. Sanders*, No. M2011-00426-CCA-R3CD, 2012 WL 5948885, at *2–6 (Tenn. Crim. App. Nov. 15, 2012). Although Petitioner raised the claim regarding the informant's testimony again on post-conviction, the TCCA held that it was not a proper basis for post-conviction relief because it was fully litigated during the direct appeal. *Sanders v. State*, No. M2014-00236-CCA-R3PC, 2014 WL 5502380, at *4 (Tenn. Crim. App. Oct. 31, 2014).

Petitioner has not cited any clearly established federal law to which the state court's decision was contrary, or which it unreasonably applied. In fact, Petitioner's argument in support of this claim is a simply a copy of part of his post-conviction appellate brief and relies exclusively on state law, except for a single footnote citation to the Fourteenth Amendment in connection with the statement that the testimony in question was "so prejudicial to the Appellant as to deny due process of law." (ECF No. 1-2, at 1–2; ECF No. 28-18, at 14–15.) In Petitioner's state appellate brief on direct appeal, he did not even include that single federal citation. (ECF No. 28-7, at 10–13.) The Sixth Circuit has identified four factors relevant to whether a petitioner's state court pleadings have "fairly presented" a federal claim: (1) relying on federal cases employing constitutional analysis, (2) relying on state cases employing federal constitutional analysis, (3) phrasing the claim in terms of constitutional law, or (4) alleging facts well within the mainstream of constitutional law. *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Petitioner has not satisfied any of those factors. None of the state cases on which Petitioner has relied for this

claim, in state court or this court, cite any federal law in their analysis of whether denial of a mistrial was appropriate. General references to a deprivation of a "fair trial" or "due process" are not sufficient to "fairly present" a federal claim to the state courts. *Id.*; *accord Gray v. Netherland*, 518 U.S. 152, 163 (1996). Accordingly, Petitioner has procedurally defaulted any federal claim in connection with the denial of his motion for mistrial, and even now "simply does not raise a cognizable federal claim." *Alley v. Bell*, 101 F. Supp. 2d 588, 657 (W.D. Tenn. 2000).

Moreover, the claim would fail on its merits even if it were properly preserved and presented. The scope of habeas review of a state court's refusal to declare a mistrial is very limited:

> That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

*Renico v. Lett*, 559 U.S. 766, 772–73 (2010). The Supreme Court has observed that its precedent "underscore[s] the breadth of a trial judge's discretion, and the reasons therefor, to declare a mistrial." *Illinois v. Somerville*, 410 U.S. 458, 462 (1973). In light of that broad discretion and the facts of this case, the state court's determination that the trial court did not abuse its discretion in denying Petitioner's motion for mistrial was not unreasonable.

And regardless of how the issue was or should have been raised, Petitioner's federal constitutional right to an impartial jury was not violated where the juror's subsequent testimony established that she did not know anything about her sister's community corrections clients and did not discuss her work with her, and that she had never met defense counsel. *See Sanders v. State*, No. M2014-00236-CCA-R3PC, 2014 WL 5502380, at *2 (Tenn. Crim. App. Oct. 31, 2014). "There is no constitutional prohibition in jurors simply knowing the parties involved or having knowledge of the case," *Wolfe v. Brigano*, 232 F.3d 409, 502 (6th Cir. 2000) (quoting *McQueen v. Scroggy*, 99 F.3d 1302, 1320 (6th Cir. 1996)), and acquaintance with defense

counsel alone does not indicate bias. *Cruz v. Jordan*, 357 F.3d 269, 270 (2nd Cir. 2004); *see also Lane v. United States*, 321 F.2d 573, 575 (5th Cir. 1963) (no cause for disqualification of three jurors where "[t]he Assistant U.S. Attorney trying the case was a friend of the three men and in the past had represented one of them in 'minor matters'"); *United States v. Butera*, 677 F.2d 1376, 1383–84 (11th Cir. 1982) (affirming denial of challenge for cause where juror had "had dealings" with defense counsel). The juror in question in this case had no special knowledge through her sister that impacted her ability to weigh the facts of Petitioner's case fairly, and, as the post-conviction trial court concluded, any bias arising from defense counsel's remote representation of her[4] would presumably work to Petitioner's advantage rather than his detriment. (ECF No. 28-12, at 57.) As the TCCA found with regard to a related claim during Petitioner's post-conviction appeal, there was no evidence in the record "of anything that prevented Ms. Camp from serving as a fair and impartial juror." *Sanders v. State*, No. M2014-00236-CCA-R3PC, 2014 WL 5502380, at *8 (Tenn. Crim. App. Oct. 31, 2014). Petitioner's claim of juror bias is without merit.

**B.     Claim 2**

Claim 2 consolidates all of Petitioner's allegations of IATC, which are eight of the nine such claims he presented in state court in his amended post-conviction petition. All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective

---

[4] The post-conviction court found that Tennessee law required it to presume bias based on what it determined was the juror's willful failure to disclose defense counsel's representation of her during voir dire. (ECF No. 28-12, at 56.) Under federal law, however, "the deliberate concealment of information on voir dire does not automatically give rise to a presumption of bias." *Williams v. Bagley*, 380 F.3d 932, 946 (6th Cir. 2004).

standard of reasonableness." *Id.* at 688. In assessing counsel's performance, a reviewing court must be highly deferential and avoid the "second-guess[ing of] counsel's assistance . . . , [as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. The court must determine whether, under the circumstances, counsel's allegedly unreasonable acts or omissions "were outside the wide range of professionally competent assistance." *Id.* at 690. In order to avoid "the distorting effects of hindsight," a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted).

The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Supreme Court has further explained the *Strickland* prejudice requirement as follows:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal citations omitted). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice

suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

As discussed above, however, federal habeas relief may not be granted on an exhausted claim under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted). With these standards in mind, the Court addresses each of Petitioner's IATC claims.

1. Pre-trial Investigation

Petitioner faults trial counsel's failure to contest that the "yellowish, white crumbling rock" at issue at trial was crack cocaine. (ECF No. 1-2, at 3–4.) He claims that counsel was

ineffective for failing to conduct "at least minimal investigation into whether or not the substance that was alleged to have been sold was in fact an illegal substance," because "if there were no cocaine, then there would be no sale of cocaine." (*Id.* at 4.) The TCCA rejected Petitioner's post-conviction claim about the alleged ineffectiveness of counsel's investigation as follows:

> The Petitioner contends that trial counsel provided ineffective assistance because he failed to conduct any meaningful pretrial investigation. He argues generally that the investigation was inadequate, but the only specific item he has identified is counsel's failure to require the State to prove that the substance the Petitioner allegedly sold the informant was cocaine. As the State notes, the Petitioner failed to offer proof at the post-conviction hearing that the substance was not cocaine. We note, as well, that the defense theory was that no sale took place. The post-conviction court found that the Petitioner failed to prove by clear and convincing evidence that counsel's investigation was inadequate. Upon review, we conclude that the evidence does not preponderate against the court's determination.

*Sanders v. State*, No. M2014-00236-CCA-R3-PC, 2014 WL 5502380, at *5 (Tenn. Crim. App. Oct. 31, 2014).

Petitioner has failed to establish that the state court's determination was unreasonable. Even if counsel's investigation had been deficient, Petitioner has not demonstrated that a more thorough investigation of the substance presumed to be crack cocaine would have led to the discovery of evidence helpful to the defense. His speculation about the possible benefits of conducting such an investigation does not entitle him to habeas relief. *See Baran v. United States*, 160 F. Supp. 3d 591, 599 (S.D.N.Y. 2016) (denying relief where the petitioner "offers only speculation that if Defense Counsel had reviewed [his] medical files, Defense Counsel might have found evidence validating his medical impairments, and such evidence might have outweighed the Government's evidence about [his] lack of health impediments"). Accordingly, Petitioner has failed to demonstrate any prejudice arising from the allegedly deficient investigation, and his claim fails on the merits.

2. Communication with Petitioner

Petitioner alleges that counsel spoke with him in jail only once and that she failed to discuss trial strategy with him or prepare him for trial.  He alleges generally that "the preparation required and expected in such 'major litigation' would have necessitated additional communication" with him. (ECF No. 1-2, at 4–5.)  The TCCA found that Petitioner failed to establish that the extent of counsel's communications with him amounted to ineffective assistance:

> The Petitioner contends that trial counsel provided ineffective assistance because he failed to communicate adequately with the Petitioner before the trial. To support his argument, he points to his sworn statement in the pro se petition that counsel only visited him once at the jail, that the jail visit was about a year before the trial, that counsel ignored his telephone calls, and that counsel failed to discuss strategy and to prepare him for the trial. Counsel testified that the Petitioner called him and that he visited the Petitioner at the jail a couple of times. He did not recall the extent of his communication with the Petitioner between the first and second trials, but he said the trial strategy did not change.

> In denying relief, the post-conviction court noted the Petitioner's failure to testify at the hearing and found that he failed to prove his claims by clear and convincing evidence. The Petitioner's allegations in his petition are not a substitute for evidentiary proof. We note, as well, that post-conviction counsel's questioning of trial counsel about the extent of the communications was brief and that trial counsel's testimony conflicted with the Petitioner's factual allegations. By failing to offer any proof that trial counsel's pretrial communication with the Petitioner constituted deficient performance, the Petitioner failed to prove his ineffective assistance claim. The evidence does not preponderate against the court's determination.

*Sanders*, 2014 WL 5502380, at *5.

Criminal defendants do not have a right to any set number of conversations with counsel.  Regardless of the number of times they spoke or did not speak, Petitioner has not identified any material information that was not communicated to or from his trial attorney, or demonstrated how any such communication failure prejudiced his defense at trial.  His "vague and conclusory" allegation that counsel failed to investigate or communicate with him "do not identify counsel's asserted failings with any specificity or show how any different conduct might have changed the result.  Such allegations cannot sustain a petition for habeas corpus."

*Lamberti v. United States*, 95–CV–1557, 1998 WL 118172, *2 (S.D.N.Y. Mar. 13, 1998). Accordingly, the state court's rejection of this claim was not unreasonable.

    3.  Voir Dire

Petitioner alleges that counsel was ineffective for failing to voir dire the prospective jurors about "friends and/or family members that would be involved with the Criminal Justice System." He claims that his failure to do so led to the inclusion of a juror who has "particularized knowledge of Community Corrections, ankle monitors and house arrest," which "amplified" the effect of improper testimony about Petitioner's being on house arrest. (ECF No. 1-2, at 5–7.) The TCCA found that counsel's decision not to question prospective jurors about probation or community corrections issues was not deficient:

> The Petitioner contends that trial counsel provided ineffective assistance by failing to screen the prospective jurors adequately, which resulted in an "unconstitutionally selected and empaneled" jury. He argues that counsel failed to discover that Ms. Camp knew before the trial that a person with an ankle monitor was on house arrest, which became significant when proof was introduced of the Petitioner's having an ankle monitor. He also argues that counsel failed to question the prospective jurors about friends or family who were involved in the criminal justice system. Counsel testified that he did not ask questions about probation or community corrections because doing so would have caused the jury to assume the Petitioner was subject to supervision. When he learned about Ms. Camp's family relationship with Ms. Clark after the trial, he raised the issue in post-trial motions and on appeal. Although Ms. Camp testified that she knew about ankle monitors being involved in house arrest, she did not attribute this knowledge to her sister. She said she and Ms. Clark discussed family matters, not Ms. Clark's employment and clientele.
>
> The post-conviction court found that trial counsel could reasonably assume, given the trial court's ruling about the inadmissibility of evidence of the Petitioner's being on community corrections, that an issue would not arise. The court also found that a prospective juror's relation to the community corrections director was not something that reasonably could have been anticipated. The court found that counsel did not provide ineffective assistance. Upon review, we conclude that the evidence does not preponderate against the post-conviction court's determination.

*Sanders*, 2014 WL 5502380, at **5–6.

Petitioner has not established that any aspect of that ruling was unreasonable. Counsel testified that he had a strategic reason for not highlighting community corrections issues during

voir dire, and Petitioner has not offered any evidence to the effect that the juror in question was biased against him because of her sister's job. To the contrary, the juror testified that she was fair and impartial to Petitioner. (ECF No. 28-13, at 49.) The juror recalled learning during the trial that Petitioner was wearing an ankle monitor at the time of the drug sale, and she knew the purpose of an ankle monitor. (*Id.* at 48–49.) But she testified that she followed the judge's admonishment not to consider Petitioner's community corrections in deliberating his guilt or innocence. (*Id.* at 53–54.) Moreover, the juror's pretrial knowledge of the purpose of ankle monitors was more likely a matter of common knowledge than "particularized knowledge," and it could not have had any prejudicial effect on the trial in light of the informant's announcement during trial that Petitioner was on community corrections and the judge's curative instruction. *See Goff v. Bagley*, 601 F.3d 445, 480 (6th Cir. 2010) (stating that courts must presume curative instructions are effective). Any alleged deficiency in counsel's failure to discover that pretrial knowledge during voir dire, therefore, did not prejudice Petitioner's case.

4. Recusal Motion

Petitioner claims that counsel was ineffective for not investigating or acting on potential judicial bias arising from the judge's prosecuting and presiding over Petitioner's earlier criminal convictions. (ECF No. 1-2, at 8–9.) The TCCA rejected Petitioner's claim, finding that Petitioner had not established any actual or presumed bias on the part of the judge or any prejudice arising from the alleged bias:

> The Petitioner contends that trial counsel was ineffective because he failed to request the trial judge recuse himself based on the judge's previous prosecution of the Petitioner when the judge was an assistant district attorney general. After reviewing documents that had been offered as sentencing exhibits, trial counsel agreed at the post-conviction hearing that the judge had prosecuted the Petitioner previously during the judge's tenure as an assistant district attorney general and had presided as the judge in previous conviction and revocation proceedings involving the Petitioner. Counsel did not think he knew at the time of the trial that the judge had prosecuted the Petitioner. He said that when he had raised an issue in a similar case, the Court of Criminal Appeals determined that no conflict existed.

The record contains a 1992 judgment signed by George C. Sexton, attorney for the State, community corrections violations warrants from 2006 and 2007 signed by George Sexton as circuit court judge, and a 2008 amended community corrections violation warrant signed by George Sexton as circuit court judge. The record reflects that the present offenses occurred in 2007, and the Petitioner's trial was in 2010.

The post-conviction court found that the trial judge had been on the bench since 2003 and that the judge could not have been involved in prosecuting the current offenses, which occurred later. The court also found that the Petitioner failed to offer any evidence that the trial court was prejudiced against the Petitioner and that trial counsel could not be faulted for making a motion that would not have been granted.

The Petitioner argues, "Here there was no investigation of judicial bias; and therefore can be no assurances that the [Petitioner] was tried by an impartial Judge." In order to prevail on this claim, the Petitioner must show that trial counsel should have requested the trial judge to recuse himself and that the Petitioner was prejudiced by the failure. However, he has cited no authority requiring automatic recusal of a judge who has previously prosecuted a defendant in another case or has presided as a judge in another case, nor has he shown any prejudice from the judge's past involvement as a judge in the Petitioner's other cases. *See, e.g., Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) ("Recusal has been held not to be required when nothing more was shown than that the trial judge had previously prosecuted a defendant on an unrelated case."); *State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006) ("A trial judge is not disqualified because that judge has previously presided over legal proceedings involving the same defendant."). The evidence does not preponderate against the post-conviction court's conclusion that Petitioner failed to prove his claim by clear and convincing evidence.

*Sanders*, 2014 WL 5502380, at *6.

Petitioner has not established that the state court's analysis was unreasonable pursuant to *Strickland*. Counsel testified to the effect that in his experience a claim of judicial bias based on a judge's past professional interactions with a defendant would not be successful, and the state court indicated that Tennessee law supported counsel's judgment on that issue and would not require recusal in his case. Even assuming, therefore, that counsel performed deficiently in failing to investigate those past interactions and file a motion for recusal, the state court's conclusion that Petitioner was not prejudiced by that failure was not unreasonable.

5. Prejudicial Testimony

Petitioner claims that counsel was ineffective for eliciting the confidential informant's testimony, discussed above, that Petitioner was on community corrections at the time of the drug sale. The state court rejected that claim:

> As a component of his ineffective assistance of counsel argument, the Petitioner contends in his brief that trial counsel and the trial judge denied him due process of law by inducing or allowing the jury to hear testimony about the Petitioner's being on community corrections. As we noted in section I, the trial court's ruling on the motion for a mistrial was reviewed by this court on direct appeal and cannot be relitigated in this post-conviction action. We will consider whether counsel provided ineffective assistance.
>
> The post-conviction court found that trial counsel's question prompted the confidential informant's statement but that the Petitioner failed to show that counsel's performance was below the threshold of competent representation in a criminal case. A criminal defendant "is not entitled to perfect representation, only constitutionally adequate representation." *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). We note that after counsel inadvertently elicited the testimony, he requested, and the trial court gave, a curative instruction. As this court noted in the Petitioner's direct appeal, the jury was aware from other testimony that the Petitioner "shushed" the informant and pointed to the ankle monitor, and the testimony about the Petitioner's being on community corrections "'provided little new information to the jury.'" *Terry Sanders*, 2012 WL 5948885, at *3 (quoting *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002)). As this court held in the direct appeal, the informant's testimony did not create a manifest necessity for a mistrial. Although the question in the direct appeal was not an ineffective assistance of counsel claim, this court's conclusion in the direct appeal opinion regarding the mistrial issue is relevant to the question of whether the Petitioner was prejudiced by counsel's eliciting the testimony. We conclude that the evidence does not preponderate against the post-conviction court's determination that Petitioner failed to prove his claim by clear and convincing evidence.

*Sanders*, 2014 WL 5502380, at *7.

Petitioner has not explained how this decision was contrary to or an unreasonable application of *Strickland*, or how he believes he was prejudiced by the testimony that he was on community corrections when the jury already knew that he had "shushed" the witness and pointed to his ankle monitor. Moreover, as the Court has already mentioned above, courts must presume that curative instructions like the one requested by counsel and given by the trial judge after the testimony in question are effective. *Goff*, 601 F.3d at 480. Even if another court were

inclined to find the testimony prejudicial under those circumstances, the state court's contrary conclusion was not unreasonable.

6.  Post-trial Juror Issue

Petitioner claims that counsel was ineffective for failing to present Ms. Camp as a witness at any post-trial hearings in connection with claims about her bias.  The TCCA considered and rejected that claim:

> The Petitioner contends that trial counsel provided ineffective assistance by failing "to properly and thoroughly investigate the biases and deliberative behaviors of the improperly seated jurors post-trial." The only juror identified is Ms. Camp, and we will limit our consideration to counsel's actions or inactions relative to Ms. Camp. The Petitioner notes that counsel did not subpoena Ms. Camp for any post-trial hearings after discovering that Ms. Clark was her sister and that he had performed legal work for Ms. Camp. Counsel acknowledged he should have subpoenaed Ms. Camp, although he doubted the Petitioner would have received a new trial. As we have stated previously, Ms. Camp testified at the post-conviction hearing that she and Ms. Clark did not discuss Ms. Clark's work or clientele. Ms. Camp and counsel testified that his prior legal work for Ms. Camp was of a limited nature, came about through Ms. Clark, and occurred without counsel and Ms. Camp speaking or meeting before the Petitioner's trial.
>
> Relative to trial counsel's post-trial efforts, the post-conviction court found that counsel raised post-trial issues regarding his prior legal work for Ms. Camp and her relationship with Ms. Clark. The court found that counsel's post-trial investigation was adequate. The evidence presented at the post-conviction hearing does not preponderate against the court's determination. The Petitioner did not present proof that counsel failed to discover, after the trial, the existence of anything that prevented Ms. Camp from serving as a fair and impartial juror or that her testimony in post-trial hearings would have resulted in his obtaining a new trial.

*Sanders*, 2014 WL 5502380, at **7–8.

Because Ms. Camp's testimony at the post-conviction hearing did not persuade the state courts that she had any bias against Petitioner or otherwise benefit him, he cannot demonstrate that the absence of that testimony at an earlier proceeding prejudiced him.  Petitioner has not established that the state court's rejection of this claim was an unreasonable application of *Strickland*.

7. Appellate Record

Petitioner claims that counsel was ineffective in failing to perfect the record for appeal, and specifically points to an oral motion that was never reduced to writing, which prevented its consideration on appeal. As addressed above in Claim 1, the TCCA did find a claim about juror Camp's relationship with counsel waived on direct appeal, but went on to examine the claim for plain error and found that Petitioner had not established "what effect, if any," the juror's "superficial" relationship with counsel had had on his trial. *State v. Sanders*, No. M2011-00426-CCA-R3-CD, 2012 WL 5948885, at *2, 5, 6 (Tenn. Crim. App. Nov. 15, 2012). On post-conviction appeal, the TCCA found that Petitioner was not prejudiced by counsel's mistake in waiving that claim:

> The Petitioner contends that trial counsel was ineffective by failing to "suitably review and perfect" the record in the direct appeal to the Court of Criminal Appeals. He argues generally that "multiple problems" existed. He notes that an issue was raised orally in a motion for a new trial but was not submitted in writing and that this court could not properly consider it. Although his brief does not identify the issue he claims was not raised in writing, we presume that the Petitioner refers to the issue of counsel's previous attorney/client relationship with Ms. Camp.
>
> As the post-conviction court noted, this court considered the issue of trial counsel's prior representation of Ms. Camp to have been waived in the direct appeal because it was not raised in the trial court in writing. *See id.* at *5–6. We acknowledge that counsel should have raised the issue in writing. The post-conviction court noted that despite the waiver, this court reviewed the issue for plain error and determined that none existed. *See id.* at *6. The postconviction court found that the Petitioner failed to show prejudice from counsel's failure to raise the issue in writing and that he did not prove his ineffective assistance of counsel claim. The transcript of the motion for a new trial reflects that the trial court considered the issue on its merits when it was raised orally and that it denied relief. We conclude that the evidence does not preponderate against the post-conviction court's determination.

*Sanders*, 2014 WL 5502380, at *8.

The state court's original finding that Petitioner had not demonstrated any clear impact on his trial from the juror's superficial relationship with trial counsel is further supported by the juror's post-conviction testimony that she was fair and impartial at trial. (ECF No. 28-13, at 49.)

The TCCA's ultimate conclusion that Petitioner was not prejudiced by counsel's waiver was therefore not unreasonable.

8. Pre-Sentence Report

Petitioner claims that counsel was ineffective for failing to provide him with a copy of his pre-sentence report before his sentencing hearing, but the TCCA found that Petitioner had not offered any proof of the premise of his claim:

> The Petitioner contends that trial counsel provided ineffective assistance by failing to ensure the Petitioner received and reviewed the presentence report before the sentencing hearing. We note, again, that the Petitioner did not testify at the sentencing hearing. Counsel could not specifically recall sending the presentence report to the Petitioner, but he assumed he did. Counsel said he discussed sentencing with the Petitioner and told the Petitioner he thought the trial court would impose a thirty-year sentence. Counsel said he anticipated that the court would impose minimum fifteen-year sentences and that the court would impose them consecutively. He said he discussed this with the Petitioner.

> The post-conviction court found that the Petitioner failed to offer any proof that he did not receive his presentence report. In light of the Petitioner's failure to testify or offer other proof that he did not receive a copy of the presentence report and that trial counsel did not review it with him, we conclude that the record supports the court's determination.

> The Petitioner has failed to establish ineffective assistance of counsel. He is not entitled to relief on this basis.

*Sanders*, 2014 WL 5502380, at *8–9. Petitioner still does not point to any proof in the record that he did not receive a copy of his pre-sentence report before his sentencing hearing, or otherwise make any effort to demonstrate that the state court's disposition of his claim was unreasonable.

For the foregoing reasons, Petitioner's IATC claims are without merit, and he is not entitled to relief on any of them.

## C.     Claim 3

Finally, Petitioner claims that the cumulative effect of alleged errors discussed above deprived him of a fair trial.  But "the Supreme Court 'has not held that distinct constitutional

claims can be cumulated to grant habeas relief.'" *Bacon v. Klee*, No. 15-2491, 2016 WL 7009108, at *5 (6th Cir. Nov. 30, 2016) (quoting *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)).  This claim will be denied.

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge
Sitting by Special Designation

Dated: September 6, 2017

The undersigned certifies that a copy of this document was served on the attorneys of record and Terry Donnell Sanders by electronic means or U.S. Mail on September 6, 2017.

s/Linda Vertriest
Deputy Clerk